```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


IMPAC WAREHOUSE LENDING GROUP, INC.,
a California corporation,

                    Plaintiff,

vs.                                     Case No.   2:04-cv-418-FtM-99SPC

GENERAL  MORTGAGE   CORPORATION   OF
AMERICA, d/b/a THE LOAN OUTLET, a
Florida    corporation,    AUGUSTINO
REALI,   individually,   and   LINDA
DURKIN, individually,

                    Defendants.
_____
```

**OPINION AND ORDER**

     This matter comes before the Court on plaintiff's Motion for Partial Summary Judgment (Doc. #56), filed on December 1, 2005, and defendants Augustino Reali and Linda Durkin's Motion for Summary Judgment (Doc. #70), filed on March 6, 2006.  Defendants filed a Response (Doc. #69) and Plaintiff filed a Memorandum of Law in Opposition (Doc. #75).  The case remains stayed as to defendant General Mortgage Corporation of America based on the pending bankruptcy, therefore, only Counts II (fraud) and III (constructive trust) are subject to review.  (See Doc. #10).  In their cross motions, the parties seek summary judgment as to Count II only.

**I.**

    Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which the movant believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815 (2001).

In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

The following facts are undisputed by the parties in their Joint Pretrial Statement (Doc. #76, IX), from which the Court freely plagiarizes:  IMPAC Warehouse Lending Group, Inc. (IMPAC or plaintiff) is a California corporation engaged in the business of mortgage warehouse lending[1].  As such, IMPAC provides lines of credit to retail mortgage lenders who use the funds supplied by IMPAC to originate residential mortgages.  On or about July 18, 2000, IMPAC entered into a Master Repurchase Agreement along with Supplemental Terms and Conditions (collectively the Mortgage Warehousing Agreement) with General Mortgage Corporation of America (GMCA).  GMCA was a local mortgage lender headquartered in Cape Coral, Florida, which sought to obtain funds from IMPAC to be used by GMCA to originate and fund residential mortgages.

The Mortgage Warehousing Agreement is structured as a repurchase agreement pursuant to which residential mortgage loans originated by GMCA are closed with funds supplied by IMPAC.  Under the terms of the Mortgage Warehousing Agreement, loans originated by GMCA with the funds supplied by IMPAC are automatically and immediately sold by GMCA to IMPAC.  Under the terms of the Mortgage Warehousing Agreement, GMCA then repurchases those loans by paying

---

[1] A warehouse lending operation funds mortgage loans for mortgage bankers as repurchase agreements by buying loans on a short-term basis with an obligation from the banker to repurchase the loans just prior to selling them in the secondary market. (Doc. #73, p. 10).

IMPAC the amount of the funds advanced by IMPAC to GMCA to fund the loan together with any additional accrued interest and related fees. This repurchase is effectuated by an arrangement with a third-party investor which agrees to purchase the loan from GMCA. Under the terms of the Mortgage Warehousing Agreement, the purchase price for these loans was required to be sent directly to IMPAC, which then used the purchase proceeds to first pay off any and all amounts due to IMPAC from GMCA and then remit any excess to GMCA; GMCA was required to immediately give physical possession to IMPAC of the original note and mortgage from each loan transaction funded by IMPAC; and IMPAC held the original loan documents until such time as GMCA made arrangements to sell the mortgages on the secondary market. At that point, IMPAC would send the original loan documents to the third-party purchaser identified by GMCA under cover of a "bailee letter" which made it clear that IMPAC owned the loan and that the third-party purchaser would only acquire title to the loan if it wired the purchase proceeds to IMPAC. Under that procedure, the third-party purchaser would then send the sale proceeds directly to IMPAC to acquire the loan.

Linda Durkin ("Durkin") was the President of GMCA during the course of the business relationship by and between IMPAC and GMCA. Durkin executed the Mortgage Warehousing Agreement on behalf of GMCA. Augustino Reali ("Reali") was Durkin's husband and was GMCA's Vice President of Operations. In order to fund mortgages under the Mortgage Warehousing Agreement, GMCA requested advances

from IMPAC by preparing and submitting to IMPAC written funding requests. The mortgage loans originated by GMCA and funded by IMPAC total $3,642,770.00. Each of the loans was initiated with a funding request from GMCA.

### III.

In order to address the motions for summary judgment as to Count II, the Court must first determine the cause(s) of action set forth in that count. Count II contains some verbiage (although deficient under Fed. R. Civ. P. 9(b)) which could be interpreted as a claim of fraud in the inducement to enter the Mortgage Warehousing Agreement (Doc. #1, ¶ 40). Both summary judgment motions also refer to fraud in the inducement. In the Joint Pretrial Statement, however, the parties agree that Count II actually only alleges a claim for common law fraud (Doc. #76, p. 2) in the performance of the Mortgage Warehousing Agreement, and agree to the legal elements of this claim (Doc. #76, p. 9). The Court therefore construes Count II as a claim of common law fraud.

As a claim of fraud, it is clear from a review of the record that there are issues of disputed material facts which preclude summary judgment. This is so even with an adverse inference from the defendants' taking of the Fifth Amendment during discovery. Therefore, plaintiff's motion for summary judgment will be denied.

Defendants argue that Count II is barred by Florida's economic loss rule. "Under the Erie doctrine, a federal court adjudicating state law claims applies the substantive law of the state." Sphinx

Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).  Under Florida law, "[t]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Indemnity Ins. Co. of North Am. v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004).  In the context of contractual privity, the economic loss rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  American Aviation, 892 So. 2d at 536.  One recognized exception to the economic loss rule, however, permits a tort action where the tort was committed independently of the contract breach, such as fraud in the inducement.  American Aviation, 892 So. 2d at 537, 543 (citing HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238 (Fla. 1996)).  "The test to determine if the economic loss rule applies is to ask if the fraud alleged is in an act of performance or in a term of the bargain." D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. 4th DCA 2003)(citing Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th DCA 2000)).  "[W]hen the fraud 'relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies.'"  Id.

The difficulty with defendants' argument is that neither defendant was a party to the contract at issue.  As is relevant to

the issue in this case, without a contract there is no basis to apply the economic loss rule. <u>American Aviation</u>, 891 So. 2d at 541; <u>Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.</u>, 899 So. 2d 1222, 1228-29 (Fla. 1st DCA 2005). Defendant Linda Durkin signed the contract in her capacity as President of General Mortgage Corporation of America, Inc.; defendant Augustino Reali did not sign the contract at all. Since neither defendants are parties to the contract in their individual capacities, the economic loss rule does not apply. Therefore, even assuming the issue was not waived and the untimely motion should otherwise be considered, defendants' summary judgment motion must be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. #56) is **DENIED.**

2. Defendants Augustino Reali and Linda Durkin's Motion for Summary Judgment (Doc. #70) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __6th__ day of July, 2006.

JOHN E. STEELE
United States District Judge